UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ENTHUSIAST GAMING, INC.,<br><br>Defendant. | Case No. 19-CV-06399-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 31 |

Before the Court is Plaintiff Michael Grecco Productions, Inc.'s ("Plaintiff") renewed motion for default judgment. ECF No. 31. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for default judgment.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a photography agency with its principal place of business in Santa Monica, California. ECF No. 1 ("Compl.") ¶ 7. Plaintiff owns the copyrights to photographs taken by Michael Grecco and licenses those photographs to third parties on his behalf. *Id.* ¶ 7. Plaintiff's business is to provide celebrity photographs to major media publications. *Id.* ¶ 13.

With respect to the instant case, Plaintiff is the owner and exclusive copyright holder of a promotional still photograph (the "Photograph") of actress Nana Visitor as Kira Nerys, a fictional character from the television show "Star Trek: Deep Space Nine." *Id.* ¶¶ 15–16. Plaintiff registered the Photograph in compliance with the Copyright Act and obtained a Certificate with Registration No. VA 1-736-729 (eff. July 7, 2010). *Id.* ¶ 16.

Defendant Enthusiast Gaming Inc. ("Defendant") is a Canadian-owned corporation doing business as Destructoid, headquartered in San Francisco, California. *Id.* ¶ 5. According to Plaintiff, Defendant uses celebrity images to drive internet traffic to its website to increase advertising revenue, and a large portion of Defendant's revenue increases with the number of visitors who click on its website and subsequently view featured third-party advertisements, *id.* ¶¶ 14, 19–20.

Plaintiff alleges that Defendant used Plaintiff's Photograph on its website without license by "prominently featuring" the Photograph to promote articles and content to increase viewership. *Id.* ¶ 21. Specifically, Plaintiff alleges that Defendant published the Photograph on October 15, 2017 without any authorization or permission from Plaintiff. *Id.* ¶¶ 22–23. Plaintiff alleges that the Photograph was published on Defendant's website to accompany an article written by CJ Andriessen, Defendant's features editor. *Id.* Plaintiff states that Defendant continued to display the Photograph through the filing of this complaint and only took down the Photograph earlier this year. *Id.* ¶ 22; ECF No. 23 at 10. Plaintiff further alleges that Defendant did not pay a license fee, inquire about the availability of a license, or confirm whether the Photograph had been authorized for use on Defendant's website before, during, or after its publication of the Photograph. Compl. ¶ 28.

**B. Procedural History**

On October 7, 2019, Plaintiff filed a complaint against Defendant that alleged two claims for copyright infringement and vicarious and/or contributory copyright infringement. Compl. ¶¶ 29–49. Plaintiff sought both injunctive relief and statutory damages. *Id.* ¶ 2.

On January 2, 2020, Plaintiff filed a case management statement noting that "Defendant was served with the summons and complaint, by substitute service, on November 11, 2019," but

that Defendant had not "appeared, answered, or otherwise responded to the complaint, and plaintiff's counsel ha[d] not been contacted by any counsel purporting to represent [D]efendant." ECF No. 10. On January 3, 2020, the Court ordered Plaintiff to file proof of service. ECF No. 12. On January 3, 2020, Plaintiff filed a proof of service indicating that Plaintiff served Bill Doe, an "[e]mployee at Earth Class mail," in person on October 10, 2019 and by mail on October 14, 2019. ECF No. 13.

That same day, the Court ordered Plaintiff to file a statement that explained (1) why service on Bill Doe was proper, and (2) why Plaintiff previously stated that Defendant was served on November 11, 2019 when the proof of service stated that Defendant was served on October 10, 2019 and October 14, 2019. ECF No. 14. On January 5, 2020, Plaintiff filed a statement in response to the Court's order regarding service. ECF No. 15. Plaintiff addressed service of process under California Code of Civil Procedure Section 415.20(a) and explained that service of the summons and complaint did in fact occur on October 10, 2019 and October 14, 2019, as indicated by the filed proof of service. *Id.* at 1–2, 3–4.

On February 8, 2020, Plaintiff moved for entry of default against Defendant. ECF No. 18. On February 11, 2020, the Clerk entered default against Defendant. ECF No. 19. On April 7, 2020, Plaintiff filed a motion for default judgment. ECF No. 23.

On July 22, 2020, the Court denied Plaintiff's motion for default judgment without prejudice. ECF No. 30. The Court concluded that Plaintiff had not established that Defendant was properly served for three reasons. *Id.* at 8–11. First, Plaintiff had not satisfied the requirements for substitute service in California Code of Civil Procedure Section 415.20(a) because Plaintiff had not stated that prepaid postage was included in mailing the summons and complaint to Defendant. *Id.* at 8. Second, Plaintiff had not provided an affidavit of the person who served Defendant as required by California Code of Civil Procedure Section 417.10(a). *Id.* at 9. Finally, Plaintiff had not established that the summons included a notice as required by California Code of Civil Procedure Section 412.30. *Id.* at 9–10. The Court thus denied Plaintiff's motion for default judgment without prejudice. The Court ordered Plaintiff to either (1) file a new motion for default

3

1  judgment and declarations and affidavits demonstrating compliance with the California Code of

2  Civil Procedure requirements or (2) propose a schedule for promptly serving Defendant. *Id.* at 11.

3  On August 18, 2020, Plaintiff filed the instant motion for default judgment. ECF No. 31

4  ("Mot."). Plaintiff also filed supporting declarations from Michael Grecco, the principal and owner

5  of Plaintiff; Peter Perkowski, counsel for Plaintiff in the instant case; and Joseph Buchanan, the

6  person who served Defendant. *See* Grecco Decl.; Perkowski Decl.; Buchanan Decl.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment when the Clerk, under Rule 55(a), has previously entered a party's default. Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Once the Clerk enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Philip Morris USA v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments."). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris*, 219 F.R.D. at 498.

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### III. DISCUSSION

#### A. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). In order to avoid the entry of an order of default judgment that may subsequently be attacked as void, the Court must determine whether jurisdiction over the instant case exists.

The Court begins with subject matter jurisdiction and then proceeds to personal jurisdiction. For the Court to exercise personal jurisdiction over a defendant, the defendant must also have been served in accordance with Federal Rule of Civil Procedure 4. Accordingly, the Court then turns to service of process.

#### 1. Subject Matter Jurisdiction

Here, Plaintiff brings this action pursuant to federal law, namely the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*. Therefore, the Court is satisfied that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The Court proceeds to consider whether the Court possesses personal jurisdiction over Defendant.

#### 2. Personal Jurisdiction

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). California's long arm statute, Cal. Civ. Proc. Code § 410.10, is co-extensive with federal due process requirements, and therefore the jurisdictional analyses under

California law and federal due process merge into one. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same.").

For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). In the instant case, the Court concludes that the exercise of general jurisdiction is appropriate.

General jurisdiction exists when a defendant is physically present or when a defendant's activities in the state are "continuous and systematic" such that the contacts approximate physical presence in the forum state. *See Schwarzenegger*, 374 F.3d at 801 (citation omitted). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted). A corporation's principal place of business "refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities . . . . which will typically be found at its corporate headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010).

Here, Plaintiff alleges that Defendant's principal place of business is in San Francisco,

California. Compl. ¶¶ 5, 9. Specifically, Plaintiff alleges that Defendant's principal and only official place of business is at 548 Market Street, San Francisco, California. ECF No. 15 at 2–3. On this basis, the Court finds that Defendant has "substantial" and "continuous and systematic" contacts with California that support the Court's exercise of general personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 801 (general jurisdiction exists where a defendant has "continuous and systematic general business contacts . . . that approximate physical presence in the forum state" (citations omitted)); *see also Golden West Veg, Inc. v. Bartley*, Case No. 16-CV-03718-LHK, 2017 WL 2335602, at *4 (N.D. Cal. May 30, 2017) (finding Plaintiff established personal jurisdiction for purposes of default judgment by alleging that Defendant had a principal place of business in Salinas, California). Accordingly, Defendant is subject to this Court's general jurisdiction.

### 3. Service of Process

Finally, for the Court to properly exercise personal jurisdiction over a defendant, the defendant must have been served in accordance with Federal Rules of Civil Procedure. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served in accordance with Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal jurisdiction." (footnote omitted)); *see also Pension Tr. Fund for Operating Eng'rs v. Kickin Enters.*, Case No. C-11-03685 JCS, 2012 WL 6711557, at *3 (N.D. Cal. Dec. 20, 2012) ("[W]here entry of default judgment is requested, the Court must determine whether service of process was adequate.").

Under the Federal Rules of Civil Procedure, a domestic or foreign corporation must be served in a judicial district of the United States and may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(h)(1), 4(e)(1).

In the instant case, Plaintiff asserts that Defendant was properly served by substitute service under California Code of Civil Procedure Section 415.20(a). ECF No. 15 at 2. Section 415.20(a) requires (1) that a copy of the summons and complaint be left during usual office hours

at the company's office; (2) that the summons and complaint be left "with the person who is apparently in charge thereof"; and (3) that after the summons and complaint are left, a copy of the summons and complaint be mailed with prepaid postage "to the person to be served at the place where a copy of the summons and complaint were left." Cal. Civ. Proc. Code § 415.20(a).

As to the first element, Plaintiff filed a proof of service indicating that substitute service was effectuated on "Bill Doe, Employee at Earth Class mail" at 548 Market Street, San Francisco, California at 12:15 p.m. on October 10, 2019. ECF No. 13. Though Earth Class mail is a private post office box rental store, under Section 415.20, defendants may be properly served at such "private post office box rental store[s]." *Hearn v. Howard*, 177 Cal. App. 4th 1193, 1202 (2009); *see Sweeting v. Murat*, 221 Cal. App. 4th 507, 513 (2013) ("[S]ervice at a private or commercial post office box is allowed [pursuant to Section 415.20]." (citation omitted)); *Painaway Australia Pty Ltd. Acn 151 146 977 v. Natures Investments Holding Pty Ltd.*, Case No. 15-CV-03276-DMR, 2016 WL 304780, at *4 (N.D. Cal. Jan. 26, 2016) ("[S]ubstitute service at a private post office box rental store may constitute sufficient service under section 415.20 . . . ."). As such, Plaintiff has established that a copy of the summons and complaint were left during usual office hours at the company's office.

As to the second element, Plaintiff indicates that Bill Doe is "authorized to accept mail and deliveries" on Defendant's behalf. ECF No. 13. Indeed, this is sufficient under California law, as "[t]he purpose of section 415.20 [is] achieved by service on the clerk at the post office box store where [defendant] rented a post office box." *Hearn*, 177 Cal. App. 4th at 1203. Therefore, Plaintiff has established that the summons and complaint were left with the person who was apparently in charge of Defendant's office.

As to the third element, the Court concludes that Plaintiff has cured the previously identified deficiency by providing a declaration from Joseph Buchanan, the person who served Defendant. The declaration of Mr. Buchanan states that, after Mr. Buchanan gave Bill Doe a copy of the summons and complaint, Mr. Buchanan sent a copy of the summons and complaint to Destructoid at 548 Market Street, San Francisco, California. Buchanan Decl. ¶ 4. The summons

and complaint were in an envelope which was "sent first class and had sufficient postage affixed to it for that purpose." *Id*. Accordingly, Plaintiff has established that a copy of the summons and complaint were mailed with prepaid postage to the person to be served at the place where a copy of the summons and complaint were left. Thus, Plaintiff has established that Defendant was properly served under Section 415.20(a).

In addition to meeting Section 415.20(a)'s requirements, Plaintiff is also required to satisfy California Code of Civil Procedure Sections 417.10(a) and 412.30 in order for substitute service to be proper. Section 417.10(a) requires that, when a corporation is served by substitute service under Section 415.20, Plaintiff must show "[p]roof that a summons was served . . . by the affidavit of the person making the service showing the time, place, and manner of service and facts showing that the service was made in accordance with this chapter." Cal. Civ. Proc. Code § 417.10(a).

The affidavit required by Section 417.10(a) must show that "the notice required by [California Code of Civil Procedure] Section 412.30 appeared on the copy of the summons served, if in fact it did appear." Cal. Civ. Proc. Code § 417.10(a). Section 412.30 requires that a copy of the summons to be served contain a notice "stating in substance: 'To the person served: You are hereby served in the within action (or special proceeding) on behalf of [the corporation being served] as a person upon whom a copy of the summons and of the complaint may be delivered to effect service on said party under the provisions of [Sections 415.20(a) and 417.10(a)].'" Cal. Civ. Proc. Code § 412.30. "Section 412.30 does not say that any specific words must be used in the notice[,] only that the notice shall state 'in substance' the provisions of the section." *Cory v. Crocker Nat'l Bank*, 123 Cal. App. 3d 665, 669 (1981). If the notice required by Section 412.30 "does not appear on the copy of the summons served, no default may be taken against such corporation or incorporated association or against such person individually, as the case may be." Cal. Civ. Proc. Code § 412.30.

In the instant case, on January 3, 2020, Plaintiff filed a proof of service signed by Mr. Buchanan, who served Defendant. *See* ECF No. 13. In support of the instant motion for default judgment, Plaintiff filed a declaration of Mr. Buchanan which supplements the information in the

9
Case No. 19-CV-06399-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

proof of service. Buchanan Decl. The proof of service and the declaration indicate the time, place, and manner of service. ECF No. 13; Buchanan Decl. ¶¶ 3–4. Although the proof of service does not state that Mr. Buchanan subsequently mailed a copy of the summons and complaint with prepaid postage, Mr. Buchanan's declaration includes this information. Buchanan Decl. ¶ 4. Furthermore, Mr. Buchanan's declaration indicates that "[t]he summons served on Destructoid contain[ed] a notice that, in substance, informed Destructoid that it was the entity being served in this action, in accordance with California Code of Civil Procedure § 412.30." *Id.* ¶ 5. Accordingly, the Court concludes that Plaintiff has established that Defendant was served in accordance with Sections 417.10(a) and 412.30 and has cured the previously identified service deficiencies.

Indeed, in its order denying default judgment, this Court cited to *Harrington v. Equity Asset & Property Management*, which included the same service deficiencies that were present in Plaintiff's previous motion for default judgment. ECF No. 30 at 8–10. In a subsequent order in *Harrington*, the district court concluded that the plaintiff had cured the service deficiencies. *Harrington v. Equity Asset & Property Mgmt.*, Case No. 18-CV-00216-GPC, 2019 WL 9089614, at *1 n.1 (S.D. Cal. Oct. 24, 2019). First, the plaintiff had established that the summons and complaint were mailed with prepaid postage to the person to be served. *Id.* Second, the plaintiff had filed an affidavit of the person making service. *Id.* Third, the plaintiff had substantially complied with Section 412.30. *Id.* In the instant case, Plaintiff has established compliance, and not merely substantial compliance, with Section 412.30. Buchanan Decl. ¶ 5. Thus, like the plaintiff in *Harrington*, Plaintiff has cured the service deficiencies previously identified by this Court.

**B. Whether Default Judgment is Proper**

Having determined that the exercise of subject matter jurisdiction and personal jurisdiction over Defendant is proper, the Court now turns to the *Eitel* factors to determine whether entry of default judgment against Defendant is warranted.

**1. First *Eitel* Factor: Possibility of Prejudice**

Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant. "A plaintiff who is denied a default judgment

and is subsequently left without any other recourse for recovery has a basis for establishing prejudice." *DiscoverOrg Data, LLC v. Bitnine Global, Inc.*, Case No. 19-CV-08098-LHK, 2020 WL 6562333, at *5 (N.D. Cal. Nov. 9, 2020) (quotation omitted). Here, Plaintiff has established that Plaintiff will be prejudiced because Defendant has not participated in this litigation and Plaintiff would be without recourse to recover for the damages caused by Defendant. Therefore, the first *Eitel* factor weighs in favor of granting default judgment.

### 2. Second and Third *Eitel* Factors: Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims as pleaded in the Complaint. Courts often analyze these two factors together. *See Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together."). In its analysis of the second and third *Eitel* factors, the Court will accept as true all well-pled allegations regarding liability. *See Fair Hous. of Marin*, 285 F.3d at 906 ("[T]he general rule is that well-pled allegations in the complaint regarding liability are deemed true."). The Court will therefore consider the merits of Plaintiff's claims and the sufficiency of the Complaint together.

Plaintiff asserts two claims against Defendant: (1) copyright infringement in violation of 17 U.S.C. § 501, *et seq.*, and (2) vicarious and/or contributory copyright infringement. However, Plaintiff's motion for default judgment addresses the merits of only Plaintiff's claim for copyright infringement. *See* Mot. at 11–12. Because Plaintiff's motion for default judgment does not address Plaintiff's claim for vicarious and/or contributory copyright infringement, the Court DENIES default judgment as to that claim and addresses only Plaintiff's claim for copyright infringement.

To state a claim for copyright infringement, a plaintiff "must show ownership of the allegedly infringed material" and "must demonstrate that the alleged infringer[] violate[d] at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). The Court addresses each of these

11
Case No. 19-CV-06399-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT

requirements in turn.

First, Plaintiff sufficiently alleges its ownership of a copyright that protects the Photograph. "A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'" *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (quoting 17 U.S.C. § 410(c)). Plaintiff provides a copyright registration for the Photograph, which lists Plaintiff as the owner of the Photograph. ECF No. 31 at 25 (copyright certificate of registration); *see also* Compl. ¶ 16 (providing the copyright registration number and date of registration and stating that the copyright was registered to Plaintiff); Grecco Decl. ¶ 2 (stating that Plaintiff "is the exclusive owner of the copyrights in and to the Photograph"). Thus, Plaintiff adequately alleges the ownership of a copyright.

Second, Plaintiff sufficiently alleges that Defendant violated an exclusive right granted to copyright holders under 17 U.S.C. § 106. Reproduction of copyright works and public display of pictoral works are some of the exclusive rights of a copyright owner. 17 U.S.C. § 106(1), (5). In the instant case, Plaintiff alleges that Defendant made and published copies of the Photograph without authorization or license from Plaintiff. Compl. ¶¶ 21–24. Specifically, Defendant published the Photograph in an article on October 15, 2017 and did not take it down until earlier this year. *Id.* ¶ 22; ECF No. 23 at 10. Defendant did not have authorization to copy or display the Photograph, and Defendant did not pay a license fee. Compl. ¶ 23. Therefore, Plaintiff adequately pleads that Defendant violated an exclusive right granted to copyright holders.

Because the Court concludes that Plaintiff has adequately stated a copyright claim, the second and third *Eitel* factors weigh in favor of granting default judgment as to this claim.

### 3. Fourth *Eitel* Factor: The Amount of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Trung Giang Corp. v. Twinstar Tea Corp.*, Case No. C 06-03594

JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the potential loss caused by the defendant's actions. *Id.* Nonetheless, courts have found that this factor "presents no barrier to default judgment" as long as the potential damages were "proportional to the harm alleged." *See Liu Hongwei v. Velocity V Ltd.*, Case No. 15-cv-05061-ODW, 2018 WL 3414053, at *8 (C.D. Cal. July 11, 2018) (finding that a request of $4,000,000 was justified); *United States v. Roof Guard Roofing Co.*, Case No. 17-cv-02592-NC, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) (holding that a request of over $1,000,000 was reasonable because the tax debt was substantiated with proof provided by the government).

Here, Plaintiff seeks to recover a total of $62,500 in statutory damages. Mot. at 16. The Court holds that this request is reasonable and proportional to the copyright violation set forth in Plaintiff's complaint, especially given the willful nature of the violation. *See* Section III(C)(2), *infra* (discussing why statutory damages are appropriate in this case and why Plaintiff has adequately alleged that Defendant's infringement was willful). The Court notes that in similar cases involving infringement of Plaintiff's photographs, courts have granted higher damages. *See Michael Grecco Productions, Inc., v. Function(X) Inc.*, Case No. 18-Civ-386, 2019 WL 1368731, at *6 (S.D.N.Y. Mar. 11, 2019) (granting default judgment to Plaintiff in the amount of $71,655 for infringement of two of Plaintiff's photographs); *Michael Grecco Productions, Inc. v. Soffersapp, LLC*, Case No. 16-24966-Civ, 2017 WL 5665382, at *2 (S.D. Fla. Nov. 8, 2017) (granting default judgment to Plaintiff in the amount of $300,000 for infringement of two of Plaintiff's photographs). Therefore, the fourth *Eitel* factor weighs in favor of default judgment.

### 4. Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the case. Where a defendant fails to appear in an action, a court can infer "the absence of the possibility of a dispute concerning material facts." *Solaria Corp. v. T.S. Energie e Risorse, S.R.I.*, Case No. 13-cv-05201-SC, 2014 WL 7205114, at *3 (N.D. Cal. Dec. 17, 2014). Defendant has

failed to make an appearance in this case. The Court therefore takes the allegations in the Complaint as true and holds that there is no dispute over material facts. *Fair Hous. of Marin*, 285 F.3d at 906. Furthermore, the evidence provided by Plaintiff establishes that Defendant copied the Photograph without authorization and published it as part of an article. Compl. ¶¶ 22–23.

The sixth *Eitel* factor considers whether failure to appear was the result of excusable neglect. A summons was issued for Defendant on October 8, 2019. ECF No. 7. Defendant was properly served via substitute service on October 10, 2019. *See* Section III(A)(3), *supra* (explaining why service was proper). In addition to effecting service, Plaintiff's counsel states that he mailed Defendant a copy of Plaintiff's first motion for default judgment, but it was refused. Perkowski Decl. ¶ 14. Nonetheless, Defendant has not made an appearance nor challenged the entry of default. Based on this record, nothing before the Court suggests that Defendant's failure to appear or litigate this case was the result of excusable neglect. In these circumstances, Defendant has no excusable reason to fail to appear in the instant case.

### 5. Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

Although the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself. *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *Hernandez v. Martinez*, Case No. 12-CV-06133-LHK, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014). Although Defendant was properly served, Defendant has not made an appearance nor challenged the entry of default. Thus, the likelihood of the case proceeding to a resolution on the merits is unlikely. Accordingly, the Court finds that this factor slightly weighs against default judgment.

### 6. Balancing of *Eitel* Factors

In sum, the following six *Eitel* factors weigh in favor of default judgment as to Plaintiff's copyright infringement claim: (1) the possibility of prejudice, (2) the merits of Plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, and (6) excusable neglect. *See Eitel*, 782

F.2d at 1471–72. The last factor, the policy favoring decisions on the merits, weighs slightly against default judgment. The Court concludes that the last *Eitel* factor is outweighed by the other six factors that favor default judgment. *See, e.g.*, *DiscoverOrg*, 2020 WL 6562333, at *8 (concluding that the last *Eitel* factor, which weighed slightly against default judgment, was outweighed by the first six *Eitel* factors, which weighed in favor of default judgment). Thus, the Court concludes that default judgment as to Plaintiff's copyright claim is appropriate.

### C. Damages

A plaintiff seeking default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). Federal Rule of Civil Procedure 55 does not require the Court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. *See Action SA v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters., Inc. v. LMC Int'l, Inc.*, Case No. 98-CV-0658A(F), 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004).

In the instant case, Plaintiff seeks injunctive relief, statutory damages, and attorneys' fees and costs stemming from Plaintiff's copyright infringement claim. The Court addresses in turn each measure of damages sought by Plaintiff.

#### 1. Injunctive Relief

Courts have power to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain the infringement of a copyright." 17 U.S.C. § 502(a). "Generally, a showing of copyright infringement liability and the threat of future violations is sufficient to warrant a permanent injunction." *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) (quoting *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp. 923, 948 (N.D. Cal. 1996)).

In the instant case, Plaintiff requests a permanent injunction against Defendant. Mot. at 17–18. However, Plaintiff has not established that there is a continued threat of future infringing activity. Since this lawsuit was filed, Defendant has removed the Photograph from its website. ECF No. 23 at 10. Moreover, Plaintiff does not allege that Defendant has copied or has the means

to copy any other of Plaintiff's copyrighted works. By contrast, in other cases where injunctions have been granted, the violation was continuing, or specific facts gave rise to a threat of future infringing activity. *See Sturkie*, 255 F. Supp. 2d at 1103 (granting injunction where the defendant "amply possesses the means for future infringement, either during a live concert or through the production of infringing video cassettes"); *Sega*, 948 F. Supp. at 940 (granting injunction because the defendant retained the computer equipment necessary to infringe Plaintiff's copyright again); *Broadcast Music, Inc. v. Paden*, Case No. 11-02199-EJD, 2011 WL 6217414, at *5 (N.D. Cal. Dec. 14, 2011) (granting injunction where the defendants continued to perform the plaintiffs' music without authorization). Thus, the Court denies Plaintiff's request for a permanent injunction.

### 2. Statutory Damages

A plaintiff may elect to receive statutory damages for a copyright infringement claim. 17 U.S.C. § 504(c)(1). For copyright infringement, a plaintiff may elect to recover statutory damages "of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If the Court determines that the infringement was willful, however, a plaintiff may recover a maximum of $150,000 per work infringed. *See id.* § 504(c)(2).

In determining the amount of statutory damages to be awarded, courts should be guided by "the nature of the copyright, the circumstances of the infringement and the . . . express qualification that in every case the assessment must be within the prescribed maximum or minimum." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). Courts should ensure that statutory damages awards on default judgment "bear[] a 'plausible relationship to Plaintiff's actual damages.'" *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (quoting *Adobe Sys., Inc. v Tilley*, Case No. C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010)). "While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is not entitled to a windfall." *Id.*

"To establish a prima facie case of willful infringement[,] plaintiff must demonstrate that defendant was aware, or should have been aware, that his activities were infringing." *Jackson*, 255

F. Supp. 2d at 1101. In the instant case, Plaintiff has established a prima facie case of willful infringement because the circumstances indicate that Defendant was aware, or should have been aware, that its activities infringed Plaintiff's copyright. Defendant's own Terms of Use instruct users to "not use other people's work . . . and present it as your own." Compl. ¶ 27. Nonetheless, Defendant used the Photograph without obtaining authorization from Plaintiff. Compl. ¶ 23. Thus, Plaintiff has adequately pled that Defendant engaged in willful infringement and is permitted to recover a maximum of $150,000 per work infringed.

Plaintiff's statutory damages award must bear a plausible relationship to Plaintiff's actual damages. Actual damages are "'often measured by the revenue that the plaintiff lost as a result of the infringement,'" and "a claim for lost profits may include a retroactive license fee measured by what the plaintiff would have earned by licensing the infringing use to the defendant." *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1276 (M.D. Fla. 2008) (quoting *Montgomery v. Noga*, 168 F.3d 1282, 1295–96 & n.19 (11th Cir. 1999)). The amount the plaintiff would have earned can be estimated using benchmark licenses, or "what licensors have paid for use of similar work." *Thornton*, 580 F. Supp. at 1276 (citing *Montgomery*, 168 F.3d at 1295–96; *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001)). Here, Plaintiff typically receives between $10,000 and $27,500 for non-exclusive one-time editorial use of a photograph, and an amount from $12,500 to $15,000 is typical. Grecco Decl. ¶ 4. Furthermore, Plaintiff would have demanded at least $12,500 if Defendant had sought a license for the Photograph. Grecco Decl. ¶ 5.

Statutory damages, however, are larger than actual damages because "in addition to compensating Plaintiff, statutory damages are intended to provide a penalty against defendants and deter potential future infringement by similarly situated actors." *Adobe Sys. Inc. v. Kern*, Case No. 09-1076-CW, 2009 WL 5218005, at *1 (N.D. Cal. Nov. 24, 2009). To provide a sufficient penalty and adequate deterrence, courts often use a multiple of a licensing fee in calculating statutory damages. *Broadcast Music, Inc. v. Opitz*, Case No. 18-cv-01914-JSW (DMR), 2018 WL 6613829, at *4 (N.D. Cal. Oct. 12, 2018) (collecting cases in this district), *report and recommendation adopted*, 2018 WL 6615140 (Nov. 19, 2018); *Paden*, 2011 WL 6217414, at *5 (collecting cases).

"Courts have consistently held that a statutory damages award three times the amount that the plaintiff would have received in licensing fees is appropriate under [17 U.S.C. § 504(c)]." *Paden*, 2011 WL 6217414, at *5. However, in some cases, including those involving willful infringement, courts make higher awards. *See, e.g.*, *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 410 (S.D.N.Y. 2016) (awarding five times licensing fee); *Broadcast Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) (awarding five times licensing fee in case of willful infringement); *Broadcast Music, Inc. v. Shabby, Inc.*, Case No. C05-4658 CRB BZ, 2006 WL 8442289 (N.D. Cal. Apr. 27, 2006), *report and recommendation adopted*, 2006 WL 8442290 (N.D. Cal. May 15, 2006) (granting more than five times licensing fee).

In the instant case, Plaintiff requests $62,500 in statutory damages. Mot. at 16. The Court concludes that this amount bears a plausible relationship to Plaintiff's actual damages of $12,500 because it represents five times the licensing fee, a multiplier that other courts have used. Moreover, this amount will deter potential future infringement by similarly situated actors by increasing the cost of copyright infringement. Finally, this amount does not represent a "windfall," particularly in light of the willful nature of the infringement. Indeed, this amount represents less than half of the $150,000 statutory limit on damages for willful infringement. Furthermore, the Court notes that the Court is unable to determine the relationship of this amount to the profits Defendant gathered as a result of featuring the Photograph because of Defendant's failure to appear. Thus, the Court awards Plaintiff $62,500 in statutory damages.

### 3. Attorneys' Fees and Costs

Finally, Plaintiff seeks $15,500 in attorneys' fees and $1,032.23 in costs. A court may award "full costs, including reasonable attorneys' fees, to the prevailing party in a claim arising under the Copyright Act." 17 U.S.C. § 505.

To calculate attorneys' fees, courts multiply the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In calculating the number of hours reasonably expended on the litigation, the Court excludes hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434.

In the instant case, counsel submits a billing rate and the total number of hours expended on the case, as well as a general description of the tasks counsel performed. Perkowski Decl. ¶¶ 6, 8. However, counsel never provides billing records showing how many hours were spent on each task. Thus, the Court cannot determine whether the 31 hours counsel spent working on the instant case were reasonably expended or were instead unnecessary. *See J&J Sports Productions, Inc. v. Ortiz*, Case No. 12-CV-05766-LHK, 2014 WL 1266267, at *3 (N.D. Cal. Mar. 24, 2014) ("Absent the submission of detailed contemporaneous time records justifying the hours claimed to have been expended on this case, the Court gives little weight to the figures provided by Plaintiff.") (quotation omitted). Accordingly, the Court denies Plaintiff's request for attorneys' fees without prejudice. Plaintiff may make a renewed motion for attorneys' fees with the requested information.

Plaintiff also requests $1,032.23 in costs. As the declaration of Plaintiff's counsel explains, these costs represent the sum of the complaint filing fee, the fee for service of process, messenger fees, and electronic research fees. Perkowski Decl. ¶ 5. Accordingly, the Court grants Plaintiff $1,032.23 in costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment on Plaintiff's claim for copyright infringement. Because Plaintiff's motion for default judgment does not address Plaintiff's claim for vicarious and/or contributory copyright infringement, the Court DENIES default judgment as to that claim. The Court awards Plaintiff $62,500 in statutory damages and $1,032.23 in costs, plus post-judgment interest to be calculated from the date of entry of judgment at the rate set forth in 28 U.S.C. § 1961. If Plaintiff wishes to file a renewed motion for attorneys' fees, Plaintiff shall file a new motion providing the information requested by this Court within 30 days of this Order.

**IT IS SO ORDERED.**

Dated: December 8, 2020

*Lucy H. Koh*
LUCY H. KOH
United States District Judge